UNITED STATES DISTRIC1T COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                         :

UNITED STATES OF AMERICA,          :

                                    :            09 Civ. 7410 (GEL)

           -v-                    :            05 Cr. 1268 (GEL)

                                    :

JOHN KWABENA YEBOAH,         :         **OPINION AND ORDER**

                                    :

                          Defendant.      :

                                    :
--------------------------------------------------------------x

GERARD E. LYNCH, Circuit Judge:[1]

    John Kwabena Yeboah, a federal prisoner, brings this motion pursuant to 28 U.S.C.

§ 2255, challenging his conviction for conspiracy to import heroin into the United States, and his

resulting sentence, principally to 37 months' imprisonment.  Because "it plainly appears from

the motion . . . and the record of prior proceedings" that this motion is devoid of merit, Rule

4(b), Rules Governing Section 2255 Proceedings for the United States District Courts, the

motion will be dismissed without the need for a response.

    Yeboah raises a number of objections, principally centered on the voluntariness of his

plea.  At the outset, it should be noted that under his plea agreement, Yeboah explicitly waived

the right to bring this motion.  In the agreement, Yeboah expressly promised that he would "not

file a direct appeal, nor litigate under Title 28, United States Code, Section 2255 and/or Section

2241, any sentence within or below the Stipulated Guidelines Range" for the crimes to which he

pled guilty.  (Plea Agreement at 4.)  Yeboah signed that agreement (6/9/08 Tr. 3), and

acknowledged that it was read to him before he signed it.  (Id. 19).  He expressly assured the

---

[1] The Honorable Gerard E. Lynch, United States Court of Appeals for the Second Circuit, sitting by designation.

Court, under oath, that he understood its terms.  (Id.)  Notwithstanding this assurance, the

principal terms of the agreement were explained to him on the record by the Court, and Yeboah

stated that he understood each of the terms thus discussed.  (Id. 19-21.)  The Court specifically

called his attention to the waiver provision, reminding Yeboah that "one of the terms of [the]

agreement is that [he was] giving up [his] right to appeal [his] sentence at all in any way and for

any reason as long as [the Court] sentence[d him] to 46 months of imprisonment or less."  (Id.

20.)  Yeboah acknowledged that he understood, the Court repeated the warning, and Yeboah

reaffirmed his understanding.  (Id. 21.)  Such waivers are valid and enforceable.  United States v.

Morgan, 406 F.3d 135, 137 (2d Cir. 2000)

    In any event, Yeboah's claims are meritless.  He contends that his plea "was not

voluntary, knowing and intelligent because [he] was not a USA citizen and had no prior

experience with [the] criminal justice system."  (Pet. 6).  Neither the fact that Yeboah was a

foreigner nor his lack of a prior criminal record, of course, demonstrates that Yeboah did not

understand his rights, the charges against him, or the consequences of his plea.  Yeboah was

provided with an attorney at government expense.  (6/9/08 Tr. 11.)  He advised the Court that he

was satisfied with the attorney; that he had discussed the charges, any defenses he might have,

the facts of the case, and the consequences of pleading guilty; and that he had had enough time

to do so.  (Id. 6-7.)

    At the conclusion of the proceeding, the Court found, on the basis of Yeboah's sworn

testimony and the Court's "observations of [his] demeanor," that Yeboah "underst[oo]d [his]

rights," was "aware of the consequences of [his] plea, including the sentence that may be

imposed," and that he was "pleading guilty voluntarily."  (Id. 23-24).  In fact, the Court

expressly noted that precisely

> because you are not an American, and I assume you are not
> especially experienced with our criminal law and our criminal
> procedure, and because you are testifying here through an
> interpreter, I have been particularly careful to observe your
> answers and to make sure that I believe that you really do
> understand what is happening here.  And I have been very
> impressed with the intelligence of your responses, with your
> choices to confer with your attorney whenever you had any further
> questions, and [with] the manner in which you have answered all
> of my questions.

(Id. 24).

More specifically, Yeboah contends that the Court "misinformed [him] as to [the]

possible maximum sentence" (Pet. 6), and that he did not understand "the nature of the charge

and the consequences of the plea" (Pet. 9).  That is false.  Yeboah was charged with violating

21 U.S.C. §§ 812, 959(a), and 960(b)(2)(A) by conspiring to import more than 100 grams of

heroin into the United States.  As for his understanding of the nature of the charge, Yeboah

stated that he had received a copy of the charging instrument, that it had been translated to

him, that he did not need it read to him because it had been "explained to me," and that he had

discussed the charge with his lawyer.  (Id. 6-7.)  Despite these assurances, the Court

specifically asked if he understood that he was charged with "violating the narcotics laws of

the United States by conspiring to import into the United States a controlled substance."  (Id.

6.)  Yeboah stated that he did.  Later, the Court had the prosecutor state the specific elements

of the crime, including the specific quantity and nature of the substance required for

conviction ("100 grams or more of heroin"), and Yeboah swore that he understood that "that

is what the Government would have to prove that [he] did."  (Id. 13-14.)

As for his understanding of the penalties, the offense carries a maximum sentence of 40 years in prison, a lifetime of supervised release and a fine of $2,000,000, or twice the gross proceeds of the crime, whichever is greater.  21 U.S.C. § 960(b)(2).  Each of these penalties was fully and accurately explained to Yeboah before he pled guilty.  (6/9/08 Tr. 14-15.) Yeboah was also informed of the mandatory minimum sentence of 5 years in prison plus four years of supervised release.  (Id. 16-17).  He was specifically advised that he could be eligible for a "safety valve" sentence below the mandatory minimum, but that probation was "not allowed as a sentence for this crime."  (Id. 17.)  He was advised of the nature of the sentencing guidelines, including the fact that the guidelines are advisory and that the judge must impose the sentence appropriate to the case after giving consideration to the guidelines. (Id. 17-18.)  Yeboah was reminded that under his plea agreement, he and the Government had agreed that the appropriate guidelines range was 37-46 months (id. 20), but was repeatedly advised that the Court was not bound by the agreement or by the guidelines, and that the sentence he would receive was not predictable (id. 17-18, 19-20).  In fact, however, Yeboah was sentenced to 37 months, the bottom end of the range he had agreed to, and well below not only the 40-year maximum (which he had been clearly advised that "by pleading guilty [he was] exposing [him]self to the risk of receiving," id. 14), but also the ordinarily applicable 5-year mandatory minimum.  Finally, although Yeboah claims that he was not informed of the "possible immigration consequence" of his plea (Pet. 16), that too is false: Yeboah was specifically informed that a guilty plea may have "other consequences" besides the sentence itself, including that "[i]f you are not a United States citizen, you are almost certain to be deported."  (6/9/08 Tr. 16.)

4

Yeboah's other claims are equally unavailing.  First, he correctly notes that he was not advised by the Court, and avers that he was not told by counsel, of his right to contact a consular officer under the Vienna Convention.  (Pet. 8, 16.)  Yeboah does not describe any way in which he was prejudiced by the absence of such consular contact, nor indeed any effect the lack of consular conduct had on the Court's proceedings or on his conviction. Failure to notify a foreign national of his right to have the local consul of his home country contacted is not a basis for finding ineffective assistance of counsel, or for reversing an otherwise lawful conviction.  United States v. De la Pava, 268 F.3d 157, 163-66 (2d Cir. 2001); Moyhernadez v. US, No. 02 Civ. 8062 (MBM), 2005 WL 351115, at *2 (S.D.N.Y. Feb. 9, 2005).

Second, he asserts that his Miranda rights were violated by an undercover DEA agent "posing as a heroin buyer in Thailand."  (Pet. 15.)  Such claims are waived by a plea of guilty. Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987).  In any event, Miranda warnings are required prior to "custodial interrogation," Miranda v. Arizona, 384 U.S. 436, 444 (1966), not before an undercover agent engages with a drug dealer.  Yeboah was not in custody, and was not being interrogated, when he made statements that were recorded or videotaped while dealing with someone he believed to be another criminal.

Third, Yeboah claims that the "evidence was insufficient to sustain a conviction" for an importation offense.  (Pet. 16).  But Yeboah's conviction was based not on evidence presented at trial, but on his own juridical admission, under oath, after being fully advised of his rights that "myself and the other individuals conspired to bring heroin into this country." (6/9/08 Tr. 21.)  He specifically acknowledged that he knew the conspiracy involved 640

grams of heroin (id. 23), that he participated in the conspiracy by bringing the heroin to a hotel room in Bangkok (where he was recorded on videotape discussing the transaction with a codefendant and an undercover agent, id. 22), and that he knew that what he was doing was against the law (id.).

Fourth, Yeboah claims, without further elaboration, that his sentence was "in violation of Brooker" [*sic*].  (Pet. 9.)  Assuming that Yeboah is referring to United States v. Booker, 543 U.S. 220 (2005), he is clearly incorrect.  Because the guidelines calculation was properly treated as advisory (6/9/08 Tr. 17-18; see also 11/21/08 Tr. 7-8), the teachings of Booker were fully respected.  In any event, because the guidelines calculation was based on the quantity of heroin that Yeboah specifically pled guilty to conspiring to import, the sentence would be unassailable even under a mandatory guidelines system.  See Blakely v. Washington, 542 U.S. 296, 310 (2004); Booker, 543 U.S. at 244.

Finally, Yeboah contends that his attorney was ineffective by "fail[ing] to conduct reasonably adequate investigation before advising [him] to plead guilty."  (Pet. 5).  Needless to say, in view of the many palpably false assertions made by Yeboah in his motion, a court would have no reason to believe this conclusory assertion.  In any event, to sustain a claim of ineffective assistance of counsel, a petitioner must show first, "that counsel's performance was deficient" – that is, that counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"– and second, that this "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).  Yeboah has met neither aspect of his burden.  He fails even to identify any specific investigative steps that his attorney allegedly unprofessionally failed to take.  It is unlikely

6

that he could, since his attorney obtained discovery from the Government, including videotape

of Yeboah's incriminating actions, and the events in question took place in Bangkok.

Moreover, Yeboah makes no attempt to explain what exculpatory or mitigating evidence his

attorney might have uncovered had he pursued any unexplored avenue of investigation.  Thus,

Yeboah has completely failed to raise any issue of prejudice.  Absent some explanation of

what counsel should have done, and what evidence could have been uncovered, Yeboah

cannot show that "but for counsel's unprofessional errors, the result of the proceeding would

have been different."  Strickland, 466 U.S. at 694.

In short, Yeboah fails to present any plausible basis for questioning his conviction.

Accordingly, the motion pursuant to 28 U.S.C. § 2255 is dismissed.  Because he has not made

a "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a

certificate of appealability is not granted.  Yeboah may, however, pursue any further appeals

in forma pauperis.


SO ORDERED.

Dated:         New York, New York
               November 9, 2009

                                                        GERARD E. LYNCH
                                                        United States Circuit Judge

7